**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Pamela Goodman, an unmarried individual,<br><br>    Plaintiff,<br><br>vs.<br><br>Staples The Office Store, LLC, a Delaware limited liability company,<br><br>    Defendant. | No. CV 08-0445-PHX-JAT<br><br>**ORDER** |

Pending before this Court is Defendant Staples The Office Store, LLC's ("Staples") Motion For Summary Judgment Or, In The Alternative, Summary Adjudication Of Issues And Motion In Limine (Doc. # 184), Plaintiff Pamela Goodman's Motion To Permit Drs. Shaoulian, Lanman, Zarrni, Shamie And All Other Health Care Providers To Testify As To Causation And Other Matters In Plaintiff's Case-In-Chief (Doc. # 189), as well as various motions in limine filed by both parties. For the reasons that follow, the Court denies Goodman's motion at Doc. # 189, grants Staples motion for summary judgment, and denies all other pending motions.

## BACKGROUND

The essential facts in this case are not in dispute. On May 7, 2007, Goodman and a companion were shopping for supplies at a Staples store when Goodman tripped over an end cap base deck. Paramedics were called and Goodman was taken by ambulance to the

Scottsdale Healthcare Emergency Department. Goodman told the Scottsdale Healthcare Emergency Department that she hit the right side of her head upon falling. She also complained of head, neck, and foot pain, as well as tingling in her left arm.

In February 2008, Goodman filed the instant action in Maricopa County Superior Court, alleging Staples negligently failed to warn Goodman of an unreasonably dangerous condition, as well as for allowing this unreasonably dangerous condition to exist. Staples timely removed Goodman's action to this Court.

## ANALYSIS

### *Motion For Reconsideration*

The Court will first consider Goodman's Motion To Permit Drs. Shaoulian, Lanman, Zarrni, Shamie And All Other Health Care Providers To Testify As To Causation And Other Matters In Plaintiff's Case-In-Chief (Doc. # 189). Although Goodman does not caption her motion at Doc. # 189 as a motion for reconsideration, the substance of Goodman's motion undoubtedly constitutes one for reconsideration. "The moving party's label for its motion is not controlling. Rather, the court will construe it, however styled, to be the type proper for relief requested." *In re 1982 Sanger*, 738 F.2d 1043, 1046 (9th Cir. 1984). Hence, the Court will address Goodman's motion under the guise of a motion for reconsideration.

Reconsideration is only appropriate if: (1) the court is presented with newly discovered, previously unavailable, evidence; (2) the court committed a clear error of law and the initial decision was manifestly unjust; or (3) there has been an intervening change in controlling law. *Sch. Dist. No. 1J, Multnomah County, Or. v. AC and S, Inc.,* 5 F.3d 1255, 1262 (9th Cir. 1993); *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999). Reconsideration may not be used to re-litigate old matters or to raise arguments or present evidence that could have been raised prior to entry of an order. *See, e.g., Fed. Deposit Ins. Agency v. World Univ.,* 978 F.2d 10, 16 (1st Cir. 1992). Additionally, "[a]bsent good cause shown, any motion for reconsideration shall be filed no later than ten (10) days after the date of the filing of the Order that is the subject of the motion." LRCiv. 7.2(g)(2).

On April 28, 2009, and June 19, 2009, this Court held hearings concerning Goodman's failure to abide by the Court's Rule 16 scheduling Order and disclosure deadlines. It is the June 19 hearing that Goodman primarily addresses in her motion contained at Doc. # 189. However, Goodman's motion was filed on August 14, nearly two months after the date of the June 19 hearing. Thus, Goodman's motion falls outside the ten day time frame contained in LRCiv. 7.2(g)(2).

Moreover, Goodman fails to articulate any of the three basis outlined above that permit this Court to reconsider its previous Order. Nevertheless, even considering the substance of Goodman's motion, the Court is unconvinced that it should depart from its June 19 Order. Goodman argues that her health care providers are permitted by existing law to testify as to their opinions during Goodman's case-in-chief. The Court does not disagree that existing law permits such testimony. However, Goodman overlooks the rationale of this Court's June 19 Order. The basis for excluding the testimony Goodman seeks to introduce in her case-in-chief is not a particular case or statutory provision that prohibits such testimony. Rather, it is Goodman's failure to abide by the Court's Rule 16 scheduling Order and disclosure deadlines that led to the exclusion of such testimony. The Court will not revisit these decisions for yet a third time.[1] The Court's April 28 and June 19 Orders remain steadfast and applicable in this case.[2]

---

[1] For the same reasons, Goodman's Motion to Prohibit Defendant From Calling A Neurologist as a Witness at Trial or, in the Alternative Motion to Permit Plaintiff to Call Previously Excluded Witnesses in Her Case-in-Chief (Doc. # 190) is denied to the extent Goodman is seeking reconsideration of the Court's prior Orders.

[2] The Court also notes counsel for Goodman's ongoing lack of respect for other Court deadlines, as evidenced by the filing of several untimely additional attachments to Goodman's statement of facts without leave of this Court. See, e.g., Doc. #'s 219, 220, 221, 223, 224, 225, 226, 227, 228, 229, 230, 231, 232, 233, 234, 235 and Staples arguments contained in Doc. # 239. While the Court, in its discretion, does not strike the untimely documents, this Court is reminded of the Irish playwright George Bernard Shaw's admonishment: "Success does not consist in never making mistakes but in never making the same one a second time."

*Motion for Summary Judgment*

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(c). Thus, summary judgment is mandated, "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Initially, the movant bears the burden of pointing out to the Court the basis for the motion and the elements of the causes of action upon which the non-movant will be unable to establish a genuine issue of material fact. *Id.* at 323. The burden then shifts to the non-movant to establish the existence of material fact. *Id.* The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts" by "com[ing] forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P. 56(e)). A dispute about a fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The non-movant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Id.* at 247-48. However, in the summary judgment context, the Court construes all disputed facts in the light most favorable to the non-moving party. *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004).

Staples argues that it is entitled to summary judgment for the following three reasons: (1) the end cap that Goodman alleges caused her fall was open and obvious and was not in an unreasonably dangerous condition; (2) Goodman cannot establish that her injuries were caused by her fall at Staples because of the limitations placed by this Court in its April 28 and June 19 Orders; and (3) Plaintiff cannot establish that her medical bills and treatment were reasonable, medically necessary, and related to her fall at Staples. Because the end cap

was open and obvious and not in an unreasonably dangerous condition, and because Goodman cannot show that her injuries were caused by her fall at Staples–both essential elements of which she would bear the burden at trial–the Court will grant summary judgment for Staples. *Celotex Corp.*, 477 U.S. at 322. As such, the Court need not address Staples' third argument.

Goodman's claim against Staples is premised upon a theory of negligence: Staples negligently failed to warn Goodman of an unreasonably dangerous condition; and Staples was negligent in allowing this unreasonably dangerous condition to exist. In Arizona, in order "[t]o prove negligence, one must establish: (1) duty, (2) breach of that duty, (3) causation, and (4) damages." *Taeger v. Catholic Family & Cmty. Servs.,* 995 P.2d 721, 730 (App. 1999).

## DUTY

Whether a person is an invitee, licensee, or trespasser determines the duty of care a landowner owes to him or her. *Robles v. Severyn,* 504 P.2d 1284, 1286 (1973). In this case, Goodman was a business invitee. "An Arizona business owner owes its invitees a duty to maintain its premises in a reasonably safe manner." *McDonald v. Smitty's Super Valu, Inc.*, 757 P.2d 120, 122 (Ariz. Ct. App. 1988). As a business invitee, Staples clearly owed a duty to Goodman. The Court will next address whether Plaintiff has presented enough evidence to create a question of fact concerning Staple's breach of the applicable standard of care.

## BREACH

"[T]he owner of a business is not an insurer of the safety of a business invitee," and "[t]he mere occurrence of a fall on a floor within business premises is insufficient to prove negligence on the part of the proprietor." *Walker v. Montgomery Ward & Co., Inc.*, 511 P.2d 699, 702 (Ariz. Ct. App. 1973) (citations omitted). Thus, "in order to impose liability on the proprietor for injuries sustained by an invitee, the plaintiff must prove either, 1) that the . . . dangerous condition is the result of defendant's acts or the acts of his servants, or 2) that defendant had actual knowledge or notice of the existence of the . . . dangerous condition,

1  or 3) that the condition existed for such a length of time that in the exercise of ordinary care
2  the proprietor should have known of it and taken action to remedy it." *Id.*

3      The underlying premise of imposing liability on a business owner in this context is
4  that an actual *dangerous condition* existed. That is, there must be something–whether an
5  object or simply the condition of the premises–that causes the business premises to be
6  dangerous and not reasonably safe for business invitees. Here, this underlying element–a
7  dangerous condition–is absent from Goodman's fall at the Staples store. Goodman claims
8  only that she tripped over an end cap base deck. She does not assert that the end cap was in
9  any way defective or otherwise protruding into the aisle or even in an abnormal position.
10 Goodman does not assert that the lighting of the store made the end cap difficult to see or
11 otherwise detect, nor does she allege any other such external elements contributed to the
12 visibility of the end cap, or lack thereof. While Goodman states that the Staples store was
13 under construction, she does not allege that this particular end cap was under construction
14 or as a result of the construction the end cap was in an unreasonably dangerous condition.
15 In fact, Goodman admits that there was a sign at the front of the Staples store warning
16 patrons that the store was under construction.

17     Likewise, the fact that the end cap was empty at the time of the incident does not
18 transform its existence in the Staples store into an unreasonably dangerous condition.
19 Whether or not there is merchandise on a particular shelf does not alter the dimensions of the
20 shelf, cause a shelf to protrude further into an aisle, or otherwise alter the physics of a
21 particular shelf. While arguable an empty shelf may garner less attention from a customer,
22 the shelf itself, as articulated by the parties and as displayed in the photos submitted by both
23 parties, is of enough size and area to remain visible. "[I]f a condition is open and obvious,
24 and business invitees encountering it can be expected to take perfectly good care of
25 themselves without further precaution, then likelihood of harm, if any, from the conditions
26 is slight, and as a matter of law the condition is not unreasonably dangerous." *Flowers v. K-*
27 *Mart Corp.*, 616 P.2d 955, 958 (Ariz. Ct. App. 1980). Staples did not owe a duty to warn
28 Goodman of the obvious. Moreover, Goodman's rationale would essentially preclude any

business owner from having empty shelves on its premises regardless of the obvious nature of the shelves. While such a practice may not be advisable from a business perspective, from a negligence perspective, an empty shelf in and of itself does not create an unreasonably dangerous condition on business premises. This is especially true as in this case, where the person walking immediately in front of Goodman successfully navigated the end cap. "Since people can and daily do sustain injuries from almost all conceivable conditions under a multitude of varying circumstances, and since the possessor of the premises is not an insurer of the safety of invitees, the line between liability and nonliability must be drawn at some point." *Berne v. Greyhound Parks of Ariz., Inc.*, 448 P.2d 388, 391 (Ariz. 1968).

Therefore, because Goodman cannot show the existence of an unreasonably dangerous condition, she has failed to demonstrate that Staples breached its duty of care owed to Goodman. Since Goodman cannot show that Staples breached its duty of care, an essential element the burden of which she would bare at trial, summary judgment is appropriate. While Goodman's fall is unfortunate, "[t]he mere occurrence of a fall on a floor within business premises is insufficient to prove negligence on the part of the proprietor." *Walker*, 511 P.2d at 702.

## Causation

Even assuming Goodman has established that Staples owed her a duty and that Staples breached its duty, she has failed to demonstrate that her alleged injuries were caused by Staples' breach.

On June 19, the Court entered the following Order limiting the testimony of Goodman's experts as well as her treating physicians:

> And let me first just reaffirm rulings with respect to witnesses Bakken, Balian, and Wilt. It was clear from the transcript that Dr. Wilt was stricken insofar as his role as so-called "case-in-chief" witness, both because of the inadequacy of the disclosures and the timeliness of the disclosures. Almost [a]s clear, but I wanted to make sure this record is clear. Witnesses Bakken and Balian were struck and are struck as case-in-chief witnesses, because of the inadequacy of their disclosures. So I want to make sure the record is clear as to those three.
>
> . . . .
>
> Now, I want to make this clear as I can on the record that the testimony, the opinion testimony, from any of these [health care] providers will be

- 7 -

> confined to what was actually developed during the course of their treatment of the Plaintiff and as evidenced by their office notes and hospital records, which would, of course, include consultation reports in the records. That will be the confining limit of those witnesses insofar as they may be called during the Plaintiff's case-in-chief. And just by way of illustration, if one of these medical providers is called upon to opine, for instance, of whether or not the trip and fall in this instance caused the various maladies, that will be deemed to be an opinion of the type that would require a report from a retained expert. And unless Plaintiff can demonstrate that that opinion is found within the office notes and the hospital records, it will be excluded. So that's just an illustration, but their role in this trial as witnesses-in-chief will be confined as I have said it, and I don't think I can say it any more clearly than what I have.

(Doc. # 185, Ex. D, pp. 4, 8-9.) Dr. Wilt was to serve as Goodman's expert economist; Dr Bakken was to serve as Goodman's human factors/reconstruction expert; and Dr. Balian was to serve as Goodman's store safety expert. Based upon the Court's April 28 and June 19 Orders, these experts are precluded from testifying in Goodman's case-in-chief. The Court will next address the extent to which Goodman's treating physicians may present testimony based upon the Court's June 19 Order.

As a result of Goodman's failures under the Court's Scheduling Order and disclosure deadlines, the Court outlined specific parameters concerning the permissible scope and use of Goodman's health care providers in her case-in-chief: "[health care] providers will be confined to what was actually developed during the course of their treatment of the Plaintiff and as evidenced by their office notes and hospital records, which would, of course, include consultation reports in the records. That will be the confining limit of those witnesses insofar as they may be called during the Plaintiff's case-in-chief." (Doc. # 185, Ex. D, p. 9.)

The underlying rationale for the Court's Order is as follows: under Federal Rules of Civil Procedure 26(a)(2)(B), the disclosure of an expert witness must be accompanied by a written report discussing the opinion of the expert, including the basis for the opinion. FED. R. CIV. P. 26(a)(2)(B)(i)-(vi). In this case, Goodman failed to include any written reports of her retained experts in accordance with the deadlines imposed by this Court. Accordingly, the Court precluded Goodman from calling such experts in her case-in-chief. With respect to the Court's June 19 Order, the Court wanted to make its ruling abundantly clear in order to prevent any circumvention of the Court's Orders by the calling of treating physicians to

opine the cause of Goodman's injuries. Such opinion testimony would fall within the rubric of expert testimony, of which an expert report must have been disclosed pursuant to Rule 26(a)(2)(B). To the extent Goodman was relying on her treating physicians to present testimony in her case-in-chief concerning the cause of her injuries, Goodman is precluded form doing so because she failed to disclose the expert reports of these treating physicians. Thus, Goodman's treating physicians would be permitted to testify concerning the care they rendered to Goodman; but to the extent they were being called on to testify in Goodman's case-in-chief concerning the cause of her injuries, such testimony was precluded.

Rule 26(a)(2)(B) exempts from the requirement of a written report only those <u>not</u> "specifically retained to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." Only the former category is implicated here. A treating physician is an expert and to the extent he or she treated the plaintiff, diagnosed the conditions and reached a prognosis, that testimony is not testimony for which the expert has been specially retained. But once the lawyer for the claimant undertakes to elicit an opinion whether a particular traumatic event caused the condition as opposed to another cause, the expert has been transformed into the same type of expert envisioned by the report requirement. Of course, if the treatment protocol necessarily called upon the physician to opine on causation then the opinion should be admissible without the necessity of a report.

If the rule were interpreted other than above, the defendant would be required to depose every physician–many or most of which might otherwise be non controversial medical witnesses testifying to non-disputed damage issues all of which are in the physician's office notes, consulting reports, and hospital records–in order to determine if some critical legal causation testimony might be sprung on that party at the time of trial. This case highlights the potential mischief of a contrary interpretation. Goodman's counsel produced a four page spreadsheet listing 35 health care providers (see Doc. # 87) many of

which were physicians.[3] Assuming these physicians are limited to their treatment protocol and given that counsel would have access to their records, counsel could easily conclude no depositions were necessary, nor would rebuttal experts be required. To require defense counsel to embark on this kind of discovery simply to discover whether a listed physician was prepared to offer an opinion beyond what was part of the treatment protocol would violate the intent and spirit of discovery and disclosure, and exacerbate the already exorbitant costs of litigation.

In an attempt to implement this distinction and still permit Goodman to call treating physicians, the Court provided a remedial measure in its June 19 Order by ordering that Goodman could call her treating physicians in her case-in-chief to testify as to their opinions regarding causation only to the extent that such opinions were disclosed in the medical records and notes. Hence, in order for Goodman's treating physicians to present expert testimony in Goodman's case-in-chief concerning the cause of her injuries, such an opinion must exist in their office notes and hospital records. Accordingly, the Court will review the office notes and hospital records submitted by Goodman to determine whether there are opinions concerning causation such that Goodman's treating physicians may testify in her case-in-chief.

In March 2007, Goodman underwent neck fusion surgery. After the incident at Staples, Goodman underwent additional neck fusion surgeries. Thomas J. Hopkins, Ph.D., M.D., was the lead surgeon for the March 2007 and July 2007 surgeries. The only reference to Goodman's fall is contained in Dr. Hopkins' office notes: "Onset of the current cervical spine upper extremity symptoms status post a fall while working in a Staples store." (Doc. # 212, attachment # 3, aka PSOF Ex. 11.) Clearly, Dr. Hopkins' statement does not address the cause of Goodman's injuries or why additional neck fusion surgeries were necessary. At most, Dr. Hopkins' statement can be understood to give a time line for when Goodman's

---

[3] Although it is not entirely clear from the record, it appears that this four page spreadsheet was produced on the last day for making expert disclosures–November 7, 2008–pursuant to the Court's April 21, 2008, Scheduling Order.

symptoms arose. Such a statement is not sufficient for purposes of disclosing Dr. Hopkin's opinion concerning the cause of Goodman's injuries. As such, Goodman is precluded from introducing Dr. Hopkin's testimony concerning the cause of Goodman's injuries in her case-in-chief.

Todd H. Lanman, M.D., F.A.C.S., assisted in Goodman's July 2007 surgery, and was the lead surgeon in Goodman's January 2008 neck fusion surgery. Similar to Dr. Hopkins' notes, Dr. Lanman's notes contain the following reference: "This is a 51-year-old woman who has a history of neck pain, status post an injury with staples who has undergone a cervical spinal fusion and then sustained an injury with a crack in the graft." (Doc. # 214, attachment # 1, aka PSOF Ex. 19.) Similar to Dr. Hopkin's records, there is no statement by Dr. Lanman concerning his opinion of the cause of Goodman's injuries.

Goodman also relies upon a letter authored by Dr. Lanman on Goodman's behalf, addressed to the Employment Development Department, State of California Disability Insurance. In his letter, Dr. Lanman states that Goodman "has been unable to work since [May 2007]; therefore, her disability needs to be dated back to this previous date. She suffered a fall postoperatively and has required three revision surgeries." (Doc. # 212, attachment # 7, aka PSOF, Ex. 15.) The Court first notes that the express limitations placed by this Court in its June 19 Order were those documents "actually developed during the course of their treatment of the Plaintiff and as evidenced by their office notes and hospital records." Even assuming Dr. Lanman's letter is such a document, it does not contain his opinion concerning the cause of Goodman's injuries. The letter simply states that Goodman is unable to work because she suffered a fall, has required three revision surgeries, and was admitted to a psychiatric facility. A time frame for when Goodman was injured, and what happened subsequent to her injuries, is insufficient to disclose Dr. Lanman's opinion concerning the cause of Goodman's injuries. Accordingly, Goodman is precluded from introducing Dr. Lanman's testimony on this point.

Natan Shaoulian, M.D., is Goodman's neurologist. In a report dated "10/13/2008," Dr. Shaoulian stated the following under "history of present illness": "This is a 53-year-old

female who tells me that in March 2007, she had C5-6 spinal fusion and in May 2007, she was at a store. They were remodeling the store. She went into one of the aisles and there was a shelf on the ground. She tripped over the shelf. She said she spun in to the air and fell to the ground hitting the right side of her head. She broke the titanium plate in her neck. She had three revisions until it was fixed." (Doc. 185, Ex. F, p. 24.) Dr. Shaoulian is clearly reiterating the series of events as told by Goodman. Dr. Shaoulian does not opine as to the cause of Goodman's injuries. The only other statement related to Goodman's fall at Staples in Dr. Shaoulian's records and notes is under the section titled "assessment and plan": "This is a patient who complains of migraine-like headaches after she fell in the supermarket. She most likely has a post concussive syndrome." (*Id.* at p. 25.) Again, there is no statement by Dr. Shaoulian containing his opinion that Goodman's fall at staples is the cause of her injuries. Statements by Goodman concerning her fall at Staples combined with Dr. Shaoulian's conclusion here that she has "post concussive syndrome," do not combine to create an opinion by Dr. Shaoulian that Goodman's injuries were in fact caused by the incident at Staples. Pursuant to the Court's June 19 Order, Dr. Shaoulian is precluded from testifying in Goodman's case-in-chief on the issue of causation.

Behnoush Zarrini, M.D., is Goodman's pain management specialist. His handwritten notes dated August 29, 2008, contain the following statement: "S/P cervical fusion and then fall and had another 2 fusion revision." (Doc. # 185, Ex. F at p. 27.) For the same reasons discussed above, this statement does not disclose Dr. Zarrini's opinion concerning the cause of Goodman's injuries, and Dr. Zarrini is precluded from testifying in Goodman's case-in-chief.

Dr. Shamie is Goodman's psychiatrist. Goodman did not file any reports or office notes authored by Dr. Shamie. Goodman did submit records from Aurora Las Encinas Hospital, though they were authored by a Dr. Shah. Nevertheless, the hospital records fail to contain an opinion as the cause of Goodman's psychiatric injuries. Under the section titled "Reason For Admission/History Of Present Illness," the following is noted: "The patient has had third neck surgery for C5-C6 disc deterioration. The patient's first neck surgery was in

March 2007, which 'she said was perfect.' The patient held in staples during on 03/08/2007 re-injuring the neck and had second surgery in August 2007." (Doc. # 217, attachment # 4, aka PSOF Ex. 26.) These statements, however, relate no connection between the incident at Staples and Goodman's psychiatric injuries. As such, Dr. Shamie is precluded from testifying in Goodman's case-in-chief concerning the cause of Goodman's psychiatric injuries.

Finally, it is not clear whether Goodman intends to use the hospital emergency room records to show causation. To the extent she relies upon these records for the purpose of demonstrating causation of her injuries, they fail. Both the Scottsdale Healthcare Emergency Department and the Century City Doctors Hospital Emergency Room records contain Goodman's statements concerning the fall and her injuries she was experiencing at the time. Neither record, however, discloses a causation opinion by a treating physician stating that Goodman's injuries were caused by her fall at Staples.

Goodman bears the burden at trial of demonstrating that her alleged injuries were caused by her fall at Staples. Based upon the Court's June 19 Order, Goodman is precluded from presenting testimony from any experts in her case-in-chief concerning the causation of her injuries; and, consistent with the Court analysis above, Goodman is precluded from presenting testimony from her treating physicians concerning the cause of her injuries. Outside of these two sources, Goodman does not present any other viable evidence demonstrating causation for the purpose of surviving a motion for summary judgment.

While Goodman underwent neck fusion surgeries subsequent to her fall at Staples, this fact alone is insufficient to demonstrate that her fall was the legal and proximate cause of her injuries. This is especially true in a case such as this one, where Goodman underwent neck fusion surgery prior to her fall at Staples. Although the parties disagree over the percentage of cases where neck fusion surgeries fail, they do agree that neck fusion surgeries are not always successful. Goodman is the responsible party for demonstrating that her subsequent neck fusion surgeries and all other alleged injuries that stem from her surgeries were caused by her fall at Staples.

Likewise, Goodman has failed to demonstrate that her alleged psychiatric injuries were caused by her fall at Staples. Given her psychiatric history coupled with the absence of any experts or treating physicians to testify that Goodman's fall is the cause of her psychiatric injuries, Goodman cannot carry her burden for purposes of summary judgment.

Therefore, because Goodman cannot demonstrate that her alleged injuries were legally and proximately caused by her fall in Staples, Goodman has failed to carry her burden on an element essential to her claim for negligence. Consequently, Goodman's claim must fail.

## CONCLUSION

Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. In order to prevail on her claim against Staples, Goodman must make a showing sufficient to establish the existence of a duty owed by Staples to Goodman, the breach of that duty, causation, and damages. *Taeger*, 995 P.2d at 730. For the reasons discussed above, Goodman has failed to demonstrate both that Staples breached its duty to her and, even assuming there was a breach of the applicable standard of care, that Goodman's fall was the cause of her alleged injuries. Therefore, the Court finds that summary judgment against Goodman is appropriate.

Accordingly,

**IT IS ORDERED** that Defendant Staples The Office Store, LLC's Motion For Summary Judgment Or, In The Alternative, Summary Adjudication Of Issues And Motion In Limine (Doc. # 184) is granted.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment in favor of Defendant, Plaintiff to take nothing.

**IT IS FURTHER ORDERED** that Plaintiff's Motion in Limine to Exclude Evidence of Plaintiff's Alleged Illegal Drug and/or Alcohol Use, Smoking and Alleged Suicide Attempt and Childhood Sexual Abuse (Doc. # 187) is denied as moot.

1    **IT IS FURTHER ORDERED** that Plaintiff's Motion in Limine to Prohibit Defendant from Contesting the Reasonableness of the Amount of All of Plaintiff's Medical Bills and the Necessity of Some or All of Them (Doc. # 188) is denied as moot.

**IT IS FURTHER ORDERED** that Plaintiff's Motion To Permit Drs. Shaoulian, Lanman, Zarrni, Shamie And All Other Health Care Providers To Testify As To Causation And Other Matters In Plaintiff's Case-In-Chief (Doc. # 189) is denied.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Prohibit Defendant From Calling A Neurologist as a Witness at Trial or, in the Alternative Motion to Permit Plaintiff to Call Previously Excluded Witnesses in Her Case-in-Chief (Doc. # 190) is denied.

**IT IS FURTHER ORDERED** that Plaintiff's Motion in Limine to Exclude Evidence of Plaintiff's Past Injury and Other Claims, Compensation for Same and Insurance Benefits (Doc. # 193) is denied as moot.

**IT IS FURTHER ORDERED** that Defendant's Response to Motion to Prohibit Defendant From Calling A Neurologist as a Witness at Trial or, in the Alternative Motion to Permit Plaintiff to Call Previously Excluded Witnesses in Her Case-in-Chief (Doc. # 196) is denied.

**IT IS FINALLY ORDERED** that Defendant's Motion in Limine to Exclude All Medical Bills and Records Disclosed After the May 15, 2009 Disclosure Deadline (Doc. # 239) is denied as moot.

DATED this 9th day of December, 2009.

James A. Teilborg
United States District Judge